Filed 7/28/15  P. v. Banks CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br><br>v.<br><br>MAURICE BANKS,<br><br>          Defendant and Appellant. | A139907<br><br>(San Mateo County<br>Super. Ct. No. SC072824A) |

**INTRODUCTION**

After entering a motel room through a window in the early morning hours of December 4, 2010, defendant severely beat and then sexually assaulted the young woman asleep there.  A jury convicted him of assault with intent to commit oral copulation during a burglary, and burglary, among other offenses.  On appeal, defendant argues he cannot be convicted of both assault with intent to commit oral copulation during a burglary, and burglary, because the latter offense is a necessarily included lesser offense of the former.  The People concede the point and we concur.  We reject defendant's claim of prejudicial prosecutorial misconduct.  Accordingly, we will dismiss defendant's conviction for burglary and otherwise affirm the judgment.

**STATEMENT OF THE CASE**

A jury convicted defendant of assault with intent to commit oral copulation during a burglary, burglary, aggravated assault, attempted oral copulation, and indecent exposure.  (Pen. Code, §§ 220, subd. (b), 460, subd. (a), 245, subd. (a)(1), 288a,

subd. (c)(2)/664, 314.)[1]  The jury also returned great bodily injury findings.  (§§ 12022.7, 12022.8, 1203.075.)  A separate count of dissuading a witness (§ 136.1) was dismissed by the court on defendant's motion.  (§1118.1.) Defendant was sentenced to a total term of life plus 5 years, and timely appeals.

## STATEMENT OF FACTS

Jane Doe was a San Francisco City College student in December 2010.  Needing a quiet place to study, she rented a motel room in Redwood City on December 3, 2010, and checked into room No. 9.  When Doe went outside to get something from her car, a Black man standing on the sidewalk near room No. 8 said something to her while grabbing and rubbing his crotch.  She ignored him and went into her room.

Doe studied, spoke with friends on her phone, and went to sleep.  Loud noises woke her up at some point, but she went back to sleep.  She was awakened again by noise coming from the back window in her room.  A man came into the room from the window.  Terrified, she called for help and ran to the front door.  As she tried to unlock the two locks on the door, the man grabbed her from behind.  "He said don't scream and do what I told you," and started beating her.

The man dragged her to the middle of the room, beat her in the face and choked her until she lost consciousness.  When she regained consciousness she was on the bed and the man was standing in front of her.  He told her to "suck his dick" and put her hands on his penis.  When the man turned around to look at the rear window, Doe ran to the front door, unlocked it, and escaped.  Screaming for help, she ran to the motel office and called 911.  A man working at the 7-Eleven store across the street from the motel heard her screaming for help and also called 911.

Doe told the 911 dispatcher she was in room No. 9 when a man entered the room, beat her up and tried to rape her.  When the dispatcher asked, "What did he look like?

_____

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

2

White, Black, Hispanic?" Doe said the room was dark but she thought "the man was Black from the—." Doe did not finish her thought, but exclaimed, "Oh, oh my god. I don't know if he's still in my room or whatever. Please—." The dispatcher persisted: "A Black male? Was he Black? White?" Doe responded: "I don't know because the room was dark, so I heard from his voice—probably a Black male."[2]

The call was made at 4:58 a.m. When the first Redwood City police officer arrived at the motel two minutes later, Doe was screaming for help. She was bleeding from the nose, eyes and mouth and appeared to have been severely beaten in the face and neck. She had difficulty seeing and her face was swollen. Later, her eyes were swollen shut. Doe told police the man was still inside her motel room. However, when police cleared the room, no one was inside. The window was open and the drapes were pushed through to the outside of the window. Some of the bedclothes were on the floor and there were bloodstains on a fitted sheet on the bed.

Doe's injuries were photographed by police and she was taken to the hospital. The doctor told her the bones behind her eyeball were broken and she would need surgery. Doe was not able to identify her attacker. She suffered permanent injury to her left eye.

At the hospital, Doe was examined by sexual assault examiner nurse Kathryn Biddle. Doe had numerous injuries all over her body. She had extreme swelling and broken bones around the eyes and in the bones of her face. Doe reported to Biddle she had been strangled, and her injuries were consistent with that report. Biddle documented Doe's injuries and took swabs of secretions from Doe's inner thighs, breasts, legs, mouth, vagina, anus and rectum.

Doe told Biddle a man entered her motel room through a window in the back of her room and attacked her. He punched her and removed her underwear. He removed

---

[2]  The recording of Doe's 911 call was played for the jury and admitted into evidence. A transcript of the call was also given to the jury, but was not admitted into evidence.

3

his own pants, placed her hand on his penis and pushed her head to his penis. She ran to the motel office screaming and dialed 911.

Police set up a perimeter and spoke to other motel occupants. At approximately 7:30 a.m., they went to room No. 8 for the second time; the first time, no one had answered. This time, defendant eventually answered the door. He was naked and said he had been asleep. Defendant dressed in blue jeans, tan boots and a blue jacket with a black pattern. The front portion of defendant's boots were noticeably scuffed and there was debris on the bottom consistent with dirt and gravel debris in the motel alleyway behind the motel rooms. There was also fresh debris on the inside of Doe's window and a partial boot print.

Defendant was taken to the police station. At booking, a key to room No. 8 was recovered from defendant's pants pocket. The booking officer noticed one of the work boots defendant was wearing had a scuff mark on the tip of the toe, as well as a blood drop on the right boot. The boots were seized as evidence. Defendant had fresh-looking scrapes on both arms and shins. He had scratches on his cheek and right hand, and abrasions on his left knuckles. Police collected a buccal swab and other evidence for a sexual assault forensic kit from defendant at the police station. Defendant had very short hair. Doe told police her attacker had very short hair.

Later that morning, a police officer took digital images of the motel area, examined the windows, and recovered a shirt with a bloodstain on it from defendant's room. The motel windows "had a crank to open them," a latch near the top of the window, and opened outward to 90 degrees. However, the officer did not check to see if the crank and latch in Doe's room were operational. The prosecutor (6'2" and "200 plus" pounds) fit through the open window. There were scuff marks on the wall outside the window, and it appeared that someone had tried to climb the wall and slipped. There were no signs of forced entry.

4

The window in Doe's room opened out to a fenced and locked alleyway. The window in Doe's room was open. The inside of the window was dusted for fingerprints and photographed. There was a partial footprint from a boot on the window sill inside Doe's room. A motel surveillance video showed defendant walking around in the parking lot at various times, including at 4:33 a.m. on December 4, wearing what appeared to be the same jacket he donned when the police officers let him get dressed. A police officer opined the pattern on the sole of defendant's boot was similar to the print recovered from the windowsill of Doe's window, and that it was made when defendant left the room. However, the officer had no specific training in shoe pattern comparisons.

A criminalist created genetic (DNA) profiles for Jane Doe and defendant. Defendant was the sole source of blood from one of the stains on the bed sheet. Defendant was the major contributor and Doe was the minor contributor of another bloodstain on the sheet. Doe was the major contributor and defendant the minor contributor of a third bloodstain on the sheet. A possible single spermatozoan cell, but no semen, was found in the blood sample from Doe's left eye swab. Spermatozoa, blood and semen were found on a gray T-shirt.

### Defense Evidence

A forensic science consultant and expert in criminalistics and footprint comparisons testified she compared defendant's boot with the photograph of the shoe print on the window sill of Doe's motel room. She opined defendant's boot did not leave the shoe print.

## DISCUSSION

### Burglary Is a Lesser Included Offense of Assault with Intent to Commit Oral Copulation During a Burglary

The jury convicted defendant of assault with intent to commit oral copulation during a burglary (§ 220, subd. (b); count 1), and burglary (§ 460, subd. (a); count 2). The trial court stayed imposition of sentence on the burglary count pursuant to section

5

654.  Defendant argues the court should have dismissed count 2 because it is a necessarily lesser included offense of count 1.  As the People acknowledge, and we agree, he is correct.  "[A]ssault with intent to commit rape during the commission of first degree burglary cannot be committed without also committing first degree burglary. . . . Section 220, subdivision (b) expressly provides that the prohibited offense must be committed 'in the commission of a burglary of the first degree, as defined in subdivision (a) of Section 460.'  Thus, first degree burglary is a lesser included offense of section 220, subdivision (b)."  (*People v. Dyser* (2012) 202 Cal.App.4th 1015, 1021.)  The remedy is to dismiss the lesser included offense conviction.  (*Id.* at pp. 1021–1022.)

### The Prosecutor Did Not Commit Prejudicial Misconduct

Defendant argues the prosecutor committed prejudicial misconduct during rebuttal argument.  He asserts the prosecutor's comments disparaged defense counsel and were so prejudicial that reversal is required.  We disagree.

### Factual Background

During his closing argument, defense counsel focused on the weaknesses he perceived in the prosecution's case which he argued was "riddled . . . with cognitive bias."  He argued, for example, the geneticist assumed defendant was a contributor to the mixed DNA samples found on Jane Doe's bed, when "truth be known, we don't know who the attacker was based on that DNA."  He also argued it was a sign of cognitive bias that the dispatcher asked Jane Doe three times if her attacker was Black, even though Jane Doe initially told the dispatcher her assailant was White.  Defense counsel also argued the window in Jane Doe's room could not have been the point of entry or exit, because "there was no sign of a break-in in the room.  [T]he window latch, . . . they can only be opened from a crank on the inside."  Defense counsel also argued the window was not wide enough for a person of defendant's size to use for ingress or egress without leaving debris behind.  At one point, returning to the theme of cognitive bias, defense counsel argued the police assumed defendant was Doe's attacker from the fact there was

6

blood in both rooms, but "they didn't know it was all his blood in his room." The prosecutor objected on the ground of facts not in evidence. The court overruled the objection and instructed "it is up to the jury to determine what the evidence is in the case." Finally, defense counsel told the jury that if Johnny Cochrane were talking to the jury, he might say, "If the boots don't fit, you must acquit."

In rebuttal, the prosecutor began: "So as [defense counsel] said, I think it's probably the only thing we agree about, is I'm going to rebut what he said. Not everything because you heard the evidence yourselves. [¶] But as I sat there and listened *to the defense butcher, misstate facts, create new facts*, I was wondering were we all sitting through the same trial here?" (Italics added.) Defense counsel interposed, "Objection. Misconduct." The objection was overruled.

Before addressing defense counsel's arguments about the DNA evidence, the prosecutor stated: "I'm just trying to go through and think of the many, many things that were either *misstated or mischaracterized.*" (Italics added.) Again, defense counsel interposed, "Same objection. Misconduct," and again the court overruled the objection.

Before discussing the defense argument about the boot print, the prosecutor stated: "*Another mischaracterization about the evidence* saying that they didn't find the boot print somehow." (Italics added.) There was no objection. Moving on to the defense arguments about the window, the prosecutor stated: "*Another invented fact* was that Jane Doe's window was locked—." (Italics added.) Defense counsel's, "Same objection. Misconduct," was overruled. Rebuttal argument concluded shortly thereafter.

Outside the jury's presence, defense counsel elaborated on his objection: "Where [the prosecutor] gets up and tells the jury that I fabricated evidence, or I am misleading the jury, it's prosecutorial misconduct. It's been held to be so in numerous cases. It deprives my client of a fair trial by going directly at my credibility and not commenting on the evidence." The prosecutor responded he was "commenting on the state of the evidence." He apologized if defense counsel took it as a personal attack; he did not

7

intend his comments to be taken that way. Rather, "I said the defense was introducing facts into the record in closing arguments that were not presented during the trial. I made such an objection during his closing argument. I was overruled. And it's my belief that that occurred on several different occasions. [¶] And so I was commenting on the fact that the jury was being—was being given new evidence during the closing by the defense."

Defense counsel maintained one of his objections followed the prosecutor's use of the word "fabricated," and two of his objections followed his use of the word "misrepresent." The trial court disagreed and observed it heard the words "misstatement, mischaracterization, and invented fact. I found none of those constitute an attack on the integrity of [defense counsel]. And of course the credibility of defense counsel is not an issue. Defense counsel nor the prosecutor are witnesses in this case. On that basis, I found no prosecutorial misconduct. . . . And that's why I overruled on the objections."

*General Principles*

" 'The applicable federal and state standards regarding prosecutorial misconduct are well established. " 'A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process." ' " [Citations.] Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves " ' "the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury." ' " [Citation.]' [Citation.] '[W]hen the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.' [Citation.]" (*People v. Smithey* (1999) 20 Cal.4th 936, 960 (*Smithey*).) "In conducting this inquiry, we 'do not lightly infer' that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements. [Citation.]" (*People v. Frye* (1998)

8

18 Cal.4th 894, 970, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 420.) "If there is a reasonable likelihood that the jury would understand the prosecutor's statements as an assertion that defense counsel sought to deceive the jury, misconduct would be established." (*People v. Cummings* (1993) 4 Cal.4th 1233, 1302.)

"It is, of course, improper for the prosecutor 'to imply that defense counsel has fabricated evidence or otherwise to portray defense counsel as the villain in the case. . . . Casting uncalled for aspersions on defense counsel directs attention to largely irrelevant matters and does not constitute comment on the evidence or argument as to inferences to be drawn therefrom.' " (*People v. Fierro* (1991) 1 Cal.4th 173, 212, overruled on another ground in *People v. Thomas* (2012) 54 Cal.4th 908, 941.) "In addressing a claim of prosecutorial misconduct that is based on the denigration of opposing counsel, we view the prosecutor's comments in relation to the remarks of defense counsel, and inquire whether the former constitutes a fair response to the latter. [Citation.]" (*People v. Frye, supra*, 18 Cal.4th at p. 978.)

Taken in context, and drawing the least damaging inference possible, we do not conclude the prosecutor here accused defense counsel of fabricating defense evidence. The prosecutor's comments referred to defense counsel's interpretation of the prosecution's evidence. It is true the prosecutor's comments did not accuse attorneys or defense counsel generally of employing tricks or twisting facts. Rather, his comments specifically accused defendant's attorney of butchering, misstating, creating, mischaracterizing, and inventing new facts for the jury's consideration. However, the prosecutor's rebuttal argument did not dwell on defense counsel's tactics, or attempt to gain any advantage by persuading the jury to disapprove of defense counsel. Instead, the prosecutor's rebuttal focused on the evidence presented and the unreasonableness, in his view, of the inferences defense counsel's argument asked the jury to draw from it. In this respect, the substance of the prosecutor's argument was a fair response to defense

counsel's argument and "properly served to remind the jury to focus on the relevant evidence and to not be swayed by argument alone." (*People v. Gionis* (1995) 9 Cal.4th 1196, 1217, fn. 13.)

Arguably more egregious comments have not been found to have crossed the line into misconduct. (See, e.g., *People v. Williams* (1996) 46 Cal.App.4th 1767, 1781–1782 [prosecutor's remarks that defense counsel's argument intended to " 'obscure the truth' " in order to " 'deceive,' 'distract' and 'confuse' the jurors" properly reminded jury it should not be distracted from relevant evidence and inferences that might logically be drawn therefrom]; *People v. Bell* (1989) 49 Cal.3d 502, 538 [comments that defense counsel's job is to " 'throw sand in your eyes' " and "get his man off" gives same reminder]; *People v. Medina* (1995) 11 Cal.4th 694, 759 [saying any experienced defense attorney can " 'twist' " and " 'poke' " at the prosecution's case to get the jury to speculate and " 'buy something' " is "unobjectionable"]; *People v. Cummings, supra*, 4 Cal.4th at p. 1302 & fn. 46 [accusing defense of attempting to hide the truth and comparing defense to octopus ink is "nothing more than urging the jury not to be misled by defense evidence"]; *People v. Marquez* (1992) 1 Cal.4th 553, 575–576 [comparing defense to "smokescreen" to hide the truth from the jury "was proper argument against the jury's acceptance of the defense presented"]; *People v. Huggins* (2006) 38 Cal.4th 175, 207 [in saying defense counsel " 'tried to smoke one past us' " the "prosecutor simply used colorful language to permissibly criticize counsel's tactical approach"].) We think there is a reasonable likelihood the prosecutor's comments "were clearly recognizable as an advocate's hyperbole" by the jury. (*People v. Sandoval* (1992) 4 Cal.4th 155, 184.) Accordingly, we do not find misconduct occurred.

In any event, assuming arguendo there was misconduct, we do not view the prosecutor's isolated comments during rebuttal argument as a pattern of misconduct elevating the error to one of federal constitutional dimension or necessitating application

of the federal standard of review.[3] (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Estrada* (1998) 63 Cal.App.4th 1090, 1106–1107.) We therefore apply our state Constitution's *Watson* standard of prejudice and determine if there is a reasonable probability of different result. (*People v. Watson* (1956) 46 Cal.2d 818.) We conclude that, given the strength of the prosecution's case, which included unrebutted DNA evidence linking defendant to the attack, defendant's lewd conduct toward Jane Doe earlier in the day, evidence surrounding the open window and access to the alley, the scuffs and debris on defendant's shoes, the severity of Jane Doe's injuries and the injuries on defendant's face, hands and shins, we find no reasonable probability the jury would have reached a more favorable result absent the objectionable comments.

## DISPOSITION

The judgment is modified to dismiss count two as a lesser included offense of count one. As so modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment omitting count two and reflecting a term of life in prison with the possibility of parole on count one. The trial court shall forward a certified copy of the amended abstract of judgment to the California Department of Corrections and Rehabilitation.

---

[3] We reject the People's contention that defendant forfeited a federal claim by failing to object on federal grounds. (*People v. Partida* (2005) 37 Cal.4th 428, 435 [defendant can argue on appeal that overruling his objection had additional legal consequence of denying him due process.]) In addition, counsel argued the prosecutor's remarks deprived him of a fair trial.

_____
DONDERO, J.

We concur:


_____
MARGULIES, Acting P. J.


_____
BANKE, J.

A139907